UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| TAMMY M. EDWARDS, | Case No. 1:08-cv-815 |
| Plaintiff, | Dlott, C.J.<br>Black, M.J. |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE ALJ UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g); AND (3) THIS CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. at 18-28) (ALJ's decision)).

**I.**

Plaintiff filed applications for DIB and SSI on December 14, 2004, alleging a disability onset date of May 31, 2002, due to degenerative joint disease of the thoracic and lumbosacral spine, chronic lumbosacral strain and mild cervical strain, Affective Disorder, Personality Disorder, and Borderline Intellectual Functioning/Mild Mental Retardation. (Tr. 95-97, 309, 494-95). Her application was denied initially and on reconsideration. Plaintiff then requested a hearing *de novo* before an ALJ. An

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

evidentiary hearing, at which Plaintiff was represented by counsel, was held on December 17, 2007. (Tr. 549-569). Dr. Mary Eileen Buban testified as a medical expert, and Vanessa Harris testified as a vocational expert.

On March 24, 2008, the ALJ entered his decision denying Plaintiff's claim. That decision stands as Defendant's final determination consequent to denial of review by the Appeals Council on September 22, 2008. (Tr. 7-10).

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2000.

2. The claimant has not engaged in substantial gainful activity since January 1, 1999 the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.)

3. The claimant has the following severe impairments: degenerative joint disease of the thoracic and lumbosacral spine; chronic lumbosacral strain; mild cervical strain; personality disorder, and borderline intellectual functioning (20 CFR 404.1520(c) 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Giving the claimant the full benefit of doubt with regard to her allegations and subjective complaints, it is found that she is limited to jobs that would requires her to lift no more than 10 pounds at a time. She is further limited to simple tasks which would afford her the opportunity to sit for 15 minutes of each hour.

    She is restricted to work that would involve only minimal personal contacts and no production quotas.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965)

7.  The claimant was born on April 21, 1970, and was 28 years old, which defines as a younger individual, age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963.)

8.  The claimant has a limited education, and is able to communicate in English (20 CFR 404.1564 and 416.964.)

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferrable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).

11.  The claimant has not been under a "disability", as defined in the Social Security Act, from January 1, 1999, through the date of this decision. (20 CFR 404.1520(g) 416.920(g)).

(Tr. 21 - 28).

  In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB or SSI.

On appeal, Plaintiff maintains that: (1) the ALJ erred in failing to find that Plaintiff's impairments met or equaled the requirements for Listings 12.05, 12.04 and/or 12.08; (2) the ALJ erred in weighing the opinion of Plaintiff's treating physician; and (3) the ALJ committed various vocational errors. The undersigned finds Plaintiff's first error to be dispositive, and, for the reasons that follow, recommends that this matter be remanded under sentence four of 42 U.S.C. § 405(g).

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

Upon consideration of an application for disability benefits, the ALJ is guided by a sequential benefits analysis, which works as follows: At Step 1, the ALJ asks if the claimant is still performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe;" at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can still perform her past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the ALJ – the ALJ determines, once it is established that the claimant can no longer perform his past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Gwizdala v. Commissioner of Soc. Sec.,* No. 98-1525, 1999 WL 777534, at *2 n.1 (6th Cir. Sept. 16, 1999) (*per curiam*). If the ALJ determines at Step 4 that the claimant can perform his past relevant work, the ALJ need not complete the sequential analysis. *See* 20 C.F.R. § 404.1520(a). However, if the ALJ errs in finding that the claimant can perform his past relevant work, the matter should be remanded for further consideration under Step 5. *See Lauer v. Bowen*, 818 F.2d 636, 641 (7th Cir. 1987).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

# III.

Plaintiff argues that the ALJ erred in evaluating Plaintiff's mental impairments with respect to the requirements of Listing 12.05(C), 12.04 and/or 12.08. The undesigned agrees.

*i.    Listing 12.05(C)*

Listing 12.05 provides as follows:

> 12.05 *Mental Retardation*: mental retardation refers to significantly subaverage general intellectual functioning with adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A.    Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
> OR
> B.    A valid verbal, performance, or full scale IQ of 59 or less;
> OR
> C.    A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function
> OR
> D.    A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence or pace; or
> 4. Repeated episodes of decompensation, each of extended duration

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

To meet the requirements of a listed impairment, a plaintiff must satisfy all of the

elements of that impairment. *See Hale v. Secretary of Health & Human Servs.,* 816 F.2d 1078, 1083 (6th Cir. 1987) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)). Accordingly, under Listing 12.05(C), a plaintiff must first demonstrate that her impairment satisfies the diagnostic description for mental retardation within 12.05, in addition to meeting the criteria of subsection C of 12.05. *See Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001). Thus, a claimant will meet the Listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria. . . ." *Carmack v. Barnhart*, No. 04-6152 147 Fed.Appx. 557, *560 (6th Cir.2005) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) (emphasis added)).

> The diagnostic description of mental retardation is as follows:
>
> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptative functioning initially manifested during the developmental period: *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills. *West v. Commissioner Social Sec. Admin*. 2007 WL 1991059, *5 (6th Cir. 2007) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993)).

Here, the ALJ found that Plaintiff suffered from borderline intellectual functioning. However, Plaintiff's school records indicate that she was placed in a program for students who were E.M.R., or "Educably Mentally Retarded," as early as 1976. (Tr. 88). Shortly after her 13th birthday, Ms. Edwards obtained a Verbal IQ score of 64, a Performance IQ score of 70, and a Full Scale IQ score of 64 on the Wechsler Intelligence Scale for Children-Revised. (Tr. 95). The school psychologist reported that these scores indicated that Ms. Edwards was functioning in the mildly retarded range of intelligence. (Tr. 95-96).

Furthermore, in July, 2006, Jennifer J. Stoeckel, Ph.D., evaluated Plaintiff and administered the Wechsler Adult Intelligence Scale-III. Dr. Stoeckel found that Ms. Edwards obtained a Verbal IQ score of 69, a Performance IQ score of 62, and an Full Scale IQ Score of 63. (Tr. 494). Dr. Stoeckel reported that the scores placed Ms. Edwards at the mild mental retardation range for intellectual functioning and was consistent with scores obtained during her youth. (*Id*). However, Dr. Stoeckel opined that Ms. Edwards would be better categorized at the Borderline Range given her level of adaptive functioning. (*Id*).

As noted above, the ALJ found that Plaintiff suffered from borderline intellectual functioning, presumably based on the opinions of the state agency psychologists, Drs. Fritch and Moore, each of whom found borderline intellectual functioning. (Tr. 22-23). Although the ALJ does not specifically identify and analyze Plaintiff's impairments with respect to Listing 12.05 (C), in his determination of whether Plaintiff meets any of the

Listed impairments, the ALJ stated *in toto:* "The expert psychological opinion provided by Dr. Buban is adopted." (Tr. 24). As noted by Plaintiff, this single sentence is the extent of the ALS's analysis of Dr. Buban's opinion.

However, per her testimony at the ALJ hearing, Dr. Buban stated that "there's some discrepancy in the record where some individuals believe she was functioning close to the borderline range, others indicate significant restrictions and possibly at the higher end of MR." (Tr. 557). Dr. Buban further stated that the evaluation reports in the file indicated that the combination of Listing 12.04 for Bipolar or Depressive Disorder and Listing 12.05 as a result of IQ scores would result in an equaling of the Listing, if the IQ scores of 60-70 were considered valid. (Tr. 557). She indicated, however, that she believed the record did not adequately demonstrate evidence of bipolar disorder. (Tr. 557-558). Dr. Buban essentially opined that there was insufficient evidence to equal the Listing [12.04], as she believed there was insufficient documentation of any other mental impairment imposing an additional and significant work-related limitation of function. Dr. Buban provided no other analysis and/or testimony with respect to Listing 12.05(C).

Accordingly, Plaintiff maintains that the ALJ erred in weighing and evaluating Dr. Buban's opinion. ALJs are required to evaluate every medical opinion of record, regardless of its source. *See* 20 C.F.R. § 404.1527(d). The ALJ must weigh the treating physician's opinion using the following factors: the length, nature and extent of the treatment relationship; the frequency of the examination; the medical specialty of the treating physician; and, the opinion's supportability by evidence and its consistency with

9

the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). With respect to the opinions of non-treating medical sources, the Regulations require ALJs to weigh their opinions using the same factors. *See* 20 C.F.R. § 404.1527(d).

Here, the ALJ provided <u>no explanation</u> as to why the opinion of Dr. Buban was entitled to greater weight than any of the opinions provided by other psychologists in the record. He simply stated that the opinion of Dr. Buban was adopted.

More importantly, as noted above, Dr. Buban determined that if Plaintiff's IQ scores were determined to be valid, her impairments would equal the Listing requirements of 12.05(C). (*See* Tr. 557). Thus, if accepted, Dr. Buban's testimony <u>supports</u> a finding that Plaintiff's impairments meet or equal Listing 12. 05(C). The ALJ adopted Dr. Buban's findings, yet determined that Plaintiff did not meet the requirements of 12.05(C)

Furthermore, the undersigned finds that Dr. Buban's testimony is less than conclusive, both in support of the ALJ's decision that Plaintiff does not meet Listing 12.05(C) and/or to the end that her impairments meet or equal Listing 12.05 (C). As noted above, Dr. Buban did not make a finding with respect to Plaintiff's mental retardation. She also testified that she did not receive a copy of Plaintiff's school records, which records indicated that Plaintiff was mildly retarded. Additionally, the ALJ did not address the validity of Plaintiff's IQ scores nor her school records.

Accordingly, the undersigned finds that the ALJ's evaluation of Dr. Buban's testimony and subsequent determination that Plaintiff's impairments did not meet Listing 12.05(C) are not supported by substantial evidence, and, therefore, this matter should be

remanded for further fact finding in order to properly determine whether Plaintiff's impairments meet or equal Listing 12.05(C).

  ii.  *Listings 12.04 and 12.08*

Listing 12.04 provides in pertinent part:

> *12.04 Affective Disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A.  Medically documented persistence, either continuous or intermittent, of one of the following:
>
>   1. Depressive syndrome characterized by at least 4 of the following:
>
>      a. Anhedonia or pervasive loss of interest in almost all activities; or
>      b. Appetite disturbance with change in weight; or
>      c. Sleep disturbance; or
>      d. Psychomotor agitation or retardation; or
>      e. Decreased energy; or
>      f. Feelings of guilt or worthlessness; or
>      g. Difficulty concentrating or thinking; or
>      h. Thoughts of suicide; or
>      i. Hallucinations, delusions, or paranoid thinking; or
>
>   2. Manic syndrome characterized by at least three of the following:
>
>      a. Hyperactivity; or
>      b. Pressure of speech; or
>      c. Flight of ideas; or
>      d. Inflated self-esteem; or
>      e. Decreased need for sleep; or
>      f. Easy distractibility; or
>      g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
>      h. Hallucinations, delusions or paranoid thinking; or
>
>   3. Bipolar syndrome with a history of episodic periods manifested

by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); AND

    B.   Resulting in at least two of the following:

        1.  Marked restriction of activities of daily living; or
        2.  Marked difficulties in maintaining social functioning; or
        3.  Marked difficulties in maintaining concentration, persistence, or pace; or
        4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(A), (B).

Listing 12.08 provides:

12.08 *Personality Disorders*: A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress. Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness. The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A.    Deeply ingrained, maladaptive patterns of behavior associated with one of the following:

    1.    Seclusiveness or autistic thinking; or
    2.    Pathologically inappropriate suspiciousness or hostility; or
    3.    Oddities of thought, perception, speech and behavior; or
    4.    Persistent disturbances of mood or affect; or
    5.    Pathological dependence, passivity, or aggressivity; or
    6.    Intense and unstable interpersonal relationships and impulsive and damaging behavior;

And

B.    Resulting in at least two of the following:

    1.    Marked restriction of activities of daily living; or
    2.    Marked difficulties in maintaining social functioning; or
    3.    Marked difficulties in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.08.

 Plaintiff argues that the ALJ's determination that Plaintiff fails to meet or equal the criteria set forth in Listings 12.04 and 12.08 is not supported by substantial evidence. Plaintiff's assertion is well-taken.

 As detailed above, the ALJ does not specifically identify and analyze Plaintiff's impairments with respect to Listings 12.04 and 12.08, and in his determination of whether Plaintiff meets any of the Listed impairments, the ALJ states *in toto:* "The expert psychological opinion provided by Dr. Buban is adopted." (Tr. 24). Again, however, Dr. Buban's testimony is less than conclusive.

 Dr. Buban stated that "[l]ooking at the 12.05, and the 12.04, if we look at consultative exam, it appears there would be an equaling, but when I look at the treating source. . . I do not see functional limitations that would equal the Listing based on 29 F, page 3." (Tr. 559). Exhibit 29 F is a Mental Impairment Questionnaire completed by Dr. Jewell Stevens, Plaintiff's family physician. (Tr. 398-401). Dr. Stevens noted that Ms. Edwards demonstrated poor judgment, varying depression, and presented as undependable and unreliable (Tr. 398). Dr. Stevens reported that Ms. Edwards had moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 400). Dr. Stevens further indicated that Plaintiff suffered from four or more episodes of decompensation within a 12 month period. (*Id.*) Listings 12.04 and 12.08

require a marked level of impairment in two of the four B criteria: activities of daily living; social functioning; concentration, persistence, or pace; and repeated episodes of decompensation. Dr. Steven's concluded that Plaintiff's mental impairments precluded employment.

However, in rejecting Dr. Steven's evaluation of Plaintiff's mental impairments, the ALJ noted that Dr. Stevens is a family practitioner, not a psychiatrist. The ALJ further found that Dr. Steven's opinion is not supported by substantial objective medical evidence or clinical findings.

Contrary to the ALJ's findings, Dr. Stoeckel noted that Ms. Edwards had a long history of maladaptive personality characteristics, observing that Ms. Edwards had made marginal adult adjustments occupationally, socially, and interpersonally. (Tr. 495). Dr. Stoeckel further opined that Ms. Edwards would meet the Social Security Listing 12.04 for Affective Disorder and Social Security Listing 12.08 for Personality Disorder. (Tr. 495).

As noted by Plaintiff, while Dr. Buban discussed the results of Dr. Stoeckel's exam in some detail, and further discussed the notes of treating source Dr. Stevens, Dr. Buban did not mention the reports of Dr. Moore, Dr. Swift, or Dr. Fritsch. Dr. Buban failed to mention that Ms. Edwards had lost custody of her children, despite the fact this was mentioned several times throughout the record. Yet Dr. Buban did testify that Ms. Edwards was dependent on benzodiazepines and engaged in medication seeking behavior, despite the fact that not a single medical record referenced benzodiazepine dependence or

14

suspected drug-seeking behavior.

Unlike Dr. Buban, Dr. Moore, Dr. Fritsch, and Dr. Stoeckel each had the opportunity to evaluate Ms. Edwards. Dr. Moore, Dr. Fritsch, and Dr. Stoeckel <u>all</u> indicated that Ms. Edwards suffered from a personality disorder that significantly impaired her social/interpersonal skills. For example, Dr. Moore noted that Ms. Edwards' test results indicated that there were severe and serious problems with her personality functioning. (Tr. 309). Likewise, Dr. Fritsch provided a diagnosis of personality disorder, and he stated that history and records suggested that Ms. Edwards had difficulty in a variety of interpersonal relationships and these factors would likely extend into work-related relationships (Tr. 320).

The ALJ, however, stated that Dr. Stoeckel's opinion could not be accepted because it was based on a one-time examination of Ms. Edwards that was not supported by Ms. Edwards' longitudinal history. (Tr. 25). Yet the ALJ provides no explanation as to why Dr. Stoeckel's opinion is entitled to less weight than Dr. Buban's opinion, when Dr. Buban likewise never had the opportunity to examine Ms. Edwards. Further, the longitudinal history establishes that Ms. Edwards has demonstrated limited insight and judgment, concrete thinking, and interpersonal conflicts.

Accordingly, based on the foregoing, the undersigned finds that there is insufficient evidence in the record to support the Commissioner's findings that Plaintiff does not meet or equal the requirements of Listings 12.04 and 12.08, and further fact-finding is necessary. *Faucher,* 17 F.3d at 174.

    *iii.*    *Neither Dr. Buban nor the ALJ addressed Listing 12.08*

15

Moreover, neither Dr. Buban nor the ALJ addressed whether or not Plaintiff met the requirements of Listing 12.08, even though the evaluations of record indicate that she suffered from a personality disorder. The ALJ simply found that Plaintiff failed to satisfy the Listings, but did not specifically discuss Listing 12.08 (nor 12.05(C) or 12.04). However, the ALJ was obligated to weigh the objective medical evidence regarding whether Plaintiff met the Listings detailed above, and to explain his rationale for the ultimate decision on this issue. As the Sixth Circuit has explained:

> To be entitled to substantial deference...[an ALJ's non-disability finding] must clearly articulate the rationale underlying the decision. *See Hurst v. Secretary of Health & Human Servs.,* 753 F.2d 517, 519 (6th Cir. 1985).
> ***
> In *Hurst*, this court discussed the articulation necessary to support an ALJ's decision regarding disability benefits. We noted "[i]t is more than merely 'helpful' for the ALJ to articulate reasons ... for crediting or rejecting particular sources of evidence. It is *absolutely essential* for meaningful appellate review." *Hurst*, 753 F.2d at 519 (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984)). Thus, an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes. Similarly, Social Security Ruling ("SSR") 82-62, provides that the "rationale for a disability decision must be written so that a clear picture of the case can be obtained." SSR 82-62 at *4. The ALJ's decision must "follow an orderly pattern and show clearly how specific evidence leads to a conclusion." *Id.*

*Bailey v. Commissioner of Soc. Sec.,* No. 98-3061, 1999 WL 96920, at *3-4 (6th Cir. Feb. 2, 1999) (italics in original). A reversal and remand, under sentence four, is thus appropriate. *See Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

## VI.

A sentence four remand provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Sec'y of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Culbertson v. Barnhart,* 214 F. Supp. 2d 788, 795 (N.D. Ohio 2002) (*quoting Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551 (6th Cir. 1984)).

# V.

Based upon the foregoing, the undersigned concludes that remand is appropriate in this matter because there is insufficient evidence to support the ALJ's decision.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner to deny Plaintiff DIB and SSI benefits be **REVERSED**, and this matter be **REMANDED** under sentence four of 42 U.S.C. § 405(g).

On remand, the Commissioner shall properly determine whether Plaintiff's impairments meet or equal Listing 12.05(C), 12.04 and 12.08 and provide a clear rational for each determination.


Date:   December 14, 2009                         s/Timothy S. Black
                                                  Timothy S. Black
                                                  United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| TAMMY M. EDWARDS, | Case No. 1:08-cv-815 |
| Plaintiff, | Dlott, J.<br>Black, M.J. |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Attached hereto is the Report and Recommended Decision of the Honorable Timothy S. Black, United States Magistrate Judge. Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations **within 14 days** after being served with this Report and Recommendation. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections **within 14 days** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).